# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANANT KUMAR TRIPATI, | Civil Action No. 2: 13-cv-0830 |
| Plaintiff, | |
| | United States District Judge |
| v. | Terrence F. McVerry |
| MARK W. HALE, *et al.*, | United States Magistrate Judge |
| | Cynthia Reed Eddy |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.   Recommendation**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendants (ECF No. 28) be granted in part and denied in part. It is further recommended that this action be transferred to the United States District Court for the District of Arizona.

**II.   Report**

   **A.   Relevant and Material Facts**

Plaintiff, Anant Kumar Tripati ("Plaintiff" or "Tripati") is a state prisoner committed to the custody of the Arizona Department of Corrections ("DOC") and currently confined at the State Correctional Institution at Tucson, Arizona ("SCI-Tucson"). Tripati, acting *pro se*, initiated this Section 1983 prisoner civil rights action on June 19, 2013, by filing a motion for leave to proceed *in forma pauperis*. (ECF No. 1). The Court denied Tripati's motion on July 20, 2013, citing Tripati's failure to comply with the requirements of 28 U.S.C. § 1915(a)(1). (ECF No. 2).

On July 23, 2013, Tripati filed a second motion for leave to proceed *in forma pauperis*. (ECF No. 3). On July 25, 2013, this Court issued a Report and Recommendation that Tripati's motion to proceed *in forma pauperis* be denied because he had already accrued "three strikes" within the meaning of 28 U.S.C. § 1915(g)[1] and could not satisfy the "imminent danger" exception to the three strikes rule.[2] (ECF No. 5). On August 12, 2013, United States District Judge Terrence F. McVerry adopted the Report and Recommendation. (ECF No. 7).

Tripati initially appealed the denial of his *in forma pauperis* motion, but later mooted that appeal by paying the filing fee. (ECF Nos. 10, 13). His Amended Complaint was docketed on February 6, 2014. (ECF No. 15). In his Amended Complaint, Tripati primarily seeks relief pursuant to 42 U.S.C. § 1983 (Count 1) based on allegations that the defendants repeatedly failed to provide adequate health care for his serious medical needs during the course of his confinement. (ECF No. 15 ¶¶ 8-9, 23). In addition to his Section 1983 claim, Tripati asserts state law claims of negligence (Count 2), breach of contract (Count 3), fraud (Count 4), unjust enrichment (Count 5), conspiracy (Count 6), and violations of Arizona's racketeering statute

---

[1] In pertinent part, Section 1915(g) provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This section is commonly referred to as the "three strikes" rule. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 310 (3d Cir. 2001).

[2] Tripati's propensity for filing dubious lawsuits is well documented. *See, e.g., Tripati v. Schriro*, 541 U.S. 1039, 1039 (2004) ("As [Tripati] has repeatedly abused this Court's process, the Clerk is directed not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1.").

(Counts 7-14). (*Id*. at ¶¶ 22-63). As Defendants, Tripati named Wexford Health Sources, Inc. ("Wexford"), the entity contracted to provide health care to the Arizona DOC from July 1, 2012 through March, 2013, and six of Wexford's corporate officers: Mark Hale (President), Daniel L. Conn (Chief Operating Officer), Elaine Gedman (Senior VP – HR), Darius Holmes (Senior VP – Operations), John M. Froehlich (Chief Financial Officer), and Dr. Thomas M. Lehman (Corporate Medical Director). (*Id*. at ¶¶ 18a – 18hii).

In broad brush, Tripati complains that he suffers from various medical impairments including food allergies, a painful renal cyst, cardiac issues, chest pain, urological problems, and symptoms such as "shakes, tremors, inability to walk, sleep, urinate, difficulty with bowel movements, [and] pain that is unbearable." (*Id*. at ¶¶ 11a, 11j, 12b, 12d, 12m, 12n). Tripati complains that various prison medical professionals – primarily Dr. Dimitric Catsaros, Dr. Admando De Guzman, and "Nurse Dawsey" – failed to adequately treat these issues. (*Id*. at ¶¶ 12c, 12e, 12g, 12r-12si). None of these individuals is named as a defendant in the Amended Complaint; instead, Tripati seeks to impose liability against Wexford and its corporate officers for allegedly engaging in a scheme to reap financial profits by obtaining large prison health care contracts and then systematically depriving inmates of timely and necessary medical services and refusing to provide adequate medical staff. (*Id*. at ¶¶ 14-17h, 20-21i). Tripati describes the gist of the scheme as follows:

> The scheme or artifice is very simple, [the Defendants] agreed to utilize their credentials to influence public officials so as to obtain contracts for health care all around the United States of America; they bribed them, obtained millions of dollars in contracts, obtained monies on these contracts, charged fees and did not perform the services as provided for in these contracts.

(*Id*. at ¶ 19).

In furtherance of this scheme, Tripati contends that Wexford denied inmates the right to see specialists or to receive follow-up medical tests "as a matter of practice." (*Id*. at ¶ 19vii). With respect to his own medical care, Tripati alleges that Wexford refused to send him to a urologist for a recommended follow-up visit, refused to allow him to be examined by an allergist, did not permit him to receive a physician-requested ultrasound on his right renal cyst, denied him a follow-up visit with a cardiologist, and exchanged several of his medications with generic versions. (*Id*. at ¶¶ 11j, 12c, 12f, 12m, 12o). He also suggests that Wexford routinely delayed or refused to fill necessary prescriptions in order to save money. (*Id*. at ¶¶ 12p, 12q). Finally, Tripati vaguely suggests that Wexford has a history of providing negligent medical care and that Wexford used "tricks and other methods of concealment" to hide their prior negligence from Arizona in order to obtain the contract with the Arizona DOC.[3] (*Id*. at ¶¶ 14-17h).

By way of relief, Tripati seeks $5,000,000 in damages from each Defendant and to have "all monies collected by Wexford . . . returned to the states." (*Id*. at p. 13).

Defendants have filed a Motion to Dismiss the Amended Complaint, with a brief in support, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 28 and 29). Tripati filed a response in opposition (ECF No. 33), and Defendants filed a reply (ECF No. 34). This matter is ripe for disposition.

B. **Standard Of Review For Motions to Dismiss**

1. *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If

---

[3] Tripati has filed similar lawsuits in other district courts against two other health care providers with Arizona prison contracts: *Tripati v. PharmaCorr*, No. 13-547 (W.D. Okla. 2013), and *Tripati v. Corizon*, No. 13-615 (D. Ariz. 2013).

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

2. *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficienty of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.

*Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described

or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

**C.     Discussion and Analysis**

    1.     <u>*Motion to Dismiss Pursuant to Rule 12(b)(6)*</u>

In pertinent part, 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

7

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The United States Supreme Court has held that "[t]he Eighth Amendment's prohibition of cruel and unusual punishment requires prison officials to provide basic medical treatment to inmates." *Weigher v. Prison Health Services*, 402 F. App'x 668, 670 (3d Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To make out a successful Eighth Amendment claim based on the denial of medical care, "the prisoner must prove that the defendant was deliberately indifferent to the prisoner's serious medical needs." *Id*. (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)). The United States Court of Appeals for the Third Circuit has found deliberate indifference where the defendant: "knows of a prisoner's need for medical treatment but intentionally refuses to provide it; delays necessary medical treatment for non-medical reasons; or prevents a prisoner from receiving needed or recommended treatment." *Id.* (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Where a prisoner alleges that a private health care provider deprived him of his Eighth Amendment rights by failing to provide competent medical care pursuant to a contractual agreement with a state, the prisoner must establish that the alleged constitutional violation occurred as the result of a policy, practice or custom. *Ozoroski v. Maue*, 460 F. App'x 94, 97-98 (3d Cir. 2011) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). As explained by one district court:

> A private health care provider acting under color of state law . . . can be liable under § 1983 for Eighth Amendment violations stemming from inadequate health treatment of prisoners. Such liability cannot rest on *respondeat superior* alone, however, but instead must be based on some policy, practice, or custom within the institution that caused the injury. Thus, to survive a motion [to dismiss], a plaintiff must [allege] a policy, practice, or custom which caused or exacerbated a serious medical need and was instituted with deliberate indifference to the consequences.

8

> For the purposes of § 1983 analysis, a policy is made when a decision-maker with final authority to establish such a policy issues an official proclamation, policy or edict. A custom, on the other hand, "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." As a result, custom can be established by "proof of knowledge and acquiescence." Under the *Estelle* test, deliberate indifference can be shown in the instant case if there is an established policy or custom that caused [the prison health care provider] to intentionally deny or delay access to necessary medical treatment for non-medical reasons, or if officials intentionally interfered with a course of treatment once prescribed.

*Carpenter v. Kloptoski*, 2010 WL 891825, at *8 (M.D. Pa. Mar. 10, 2010) (quoting *Johnson v. Stempler*, 2007 WL 984454, at *4 (E.D. Pa. Mar. 27, 2007)); *see also Rye v. Erie County Prison*, 689 F.Supp.2d 770, 780 (W.D. Pa. 2009) (noting that a prisoner must both "identify a custom or policy, and specify what exactly the custom or policy was") (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).

As a threshold matter, the Court notes that Tripati's Amended Complaint lacks any substantive allegations at all concerning Hale, Conn, Gedman, Holmes, Froehlich, and Lehman. It is axiomatic that Section 1983 liability must be premised upon a defendant's "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Where the defendant is a supervisor or a director, liability can only be imposed if the plaintiff can establish that the defendant played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Here, however, the only references to the individual Defendants that appear anywhere in the Amended Complaint consist of brief biographical summaries quoted directly from their profiles on Wexford's corporate website. (ECF No. 15 at ¶¶ 18b-18hii; ECF No. 20 at 5-6). Simply put, Tripati has failed to plead any facts from which it

9

might be inferred that any of the individual Defendants had any personal involvement in the alleged misconduct. Accordingly, the Court recommends that all of Tripati's claims against Hale, Conn, Gedman, Holmes, Froehlich, and Lehman be dismissed.

With respect to Wexford, in order to state a claim, Tripati must plead that Wexford, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [his] constitutional harm." *Roach v. SCI Graterford Med. Dep't*, 398 F.Supp.2d 379, 388 (E.D. Pa. 2005) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). In his Amended Complaint, Tripati alleges that Wexford maintained a practice of systematically denying and delaying medical care to inmates in order to reap financial gain. Tripati states that Wexford enacted several specific policies and customs in furtherance of this scheme, such as denying referrals to specialists "as a matter of practice," refusing to perform medical tests recommended by prison physicians, and implementing an oversight procedure known as a "collegial call" that served to prevent or delay inmates from receiving recommended follow-up and specialty care. Finally, Tripati avers that he was forced to endure substantial pain and discomfort because Wexford's policies deprived him of appropriate medical care for his serious medical conditions including allergies, a renal cyst, and cardiac and urological impairments.

On balance, the Court concludes that these allegations are sufficient to state an Eighth Amendment claim against Wexford at this preliminary stage in the proceedings. Courts have routinely allowed similar actions to proceed, including several against Wexford. For example, in *King v. Wexford Health Sources*, the district court held that the plaintiff had stated an Eighth Amendment claim based on the precise same policy or custom at issue here:

> Defendant Wexford contends in the motion to dismiss that Plaintiff has
> failed to adequately plead a custom and policy sufficient to state a cause

> of action. However, Plaintiff alleges that Defendant Wexford has implemented a policy of cost cutting measures that resulted in his not receiving proper care for his hepatitis. As a result of not receiving proper care for his hepatitis, his condition advanced to the point where he is considered high risk and was consequently denied a hip replacement. Because he is not receiving a hip replacement, he is living with pain and a burning sensation.
>
> Plaintiff's complaint more than adequately states a policy that was the direct cause or moving force behind what he alleges is constitutionally inadequate medical care. Defendants in their motion to dismiss argue that Plaintiff is required to plead a specific policy or practice, and that is what Plaintiff has done. Plaintiff's complaint satisfactorily pleads a claim for deliberate indifference against Defendant Wexford.

*King v. Wexford Health Sources, Inc.*, 2011 WL 6016355, at *3 (N.D. Ill. Dec. 1, 2011). The majority of courts confronted with this issue have reached the same conclusion. *See, e.g., Shaw v. Obaisi*, 2015 WL 638521, at *4 (N.D. Ill. Feb. 12, 2015) (denying a motion to dismiss based on the plaintiff's allegations that Wexford maintained a "uniform practice and policy of cutting or avoiding costs at the expense and reckless disregard of inmate medical care," a policy of understaffing medical personnel, and policies of "refusing or delaying medical treatment and/or collegial review" and "delaying or refusing to provide prescribed pain medication to lower costs"); *Cohen v. Wexford Health Source, Inc.*, 2015 WL 461888, at *5 (D. Md. Feb. 3, 2015) (denying a motion to dismiss based on plaintiff's claim that a serious injury was not addressed by medical personnel in a timely fashion); *Maskelunas v. Wexford Health Source, Inc.*, 2015 WL 252293, at *2 (W.D. Pa. Jan. 20, 2015) (permitting a deliberate indifference claim to proceed against Wexford based on allegations that the defendants "countermanded treatment already implicitly found necessary by at least one other medical professional . . . solely to save money").

Consistent with the foregoing, Wexford's motion to dismiss should be denied as to Tripati's Section 1983 claim.[4]

2. *Motion to Transfer Pursuant to 28 U.S.C. §§ 1404(a)*

In the event that any of Tripati's claims are permitted to proceed, Wexford requests that this action be transferred to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a). In pertinent part, that provision provides as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

*Id*. The general venue provision applicable to Section 1983 actions, 28 U.S.C. § 1391, provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Defendants request that this action be transferred to Arizona because all of the events underlying Tripati's claims occurred in Arizona and because Tripati remains incarcerated in an Arizona state prison.

In determining whether an action should be transferred pursuant to Section 1404(a), courts apply a multi-factor test that takes into account both private and public interests. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). The private interests include: the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claims arose; (4)

---

[4] Although it appears that Defendants are seeking dismissal of Tripati's complaint in its entirety, Defendants have not individually briefed (or even addressed) any of Tripati's state law claims. In light of this omission, this Court's general unfamiliarity with Arizona law, and this Court's recommendation, *infra*, that this action be transferred to the United States District Court for the District of Arizona, it is recommended that Defendants' motion to dismiss Counts 2 through 14 of the Amended Complaint be denied without prejudice. Defendants may renew their motion to dismiss those claims – and raise any other threshold issues, such as exhaustion – at the discretion of the Arizona District Court.

the convenience of the parties given their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in a given forum; and (6) the location of books and records to the extent they could not be produced in the alternative forum. *Id*. at 879. Public interests include: (1) the enforceability of the judgment; (2) practical considerations of trial logistics; (3) the relative court congestion of the two fora; (4) the local interests of each forum in deciding local controversies; (5) the public policies of the fora; and (6) the judges' relative familiarity with the applicable law. *Id*. at 879-80.

After careful review of the pertinent private and public interests involved, the Court finds that the majority of those factors weigh strongly in favor of transfer. Each of the claims in this litigation arose during the course of Tripati's incarceration in the Arizona state prison system, and all of the events underlying those claims occurred in Arizona. Moreover, Tripati is still incarcerated in Arizona, presenting significant challenges to his ability to travel to Pennsylvania to pursue this litigation. The majority of the potential witnesses in this action – the doctors and nurses who provided Tripati's medical care – are also located in Arizona. Although Wexford is headquartered in Pennsylvania, the Defendants have indicated their preference to litigate this action in Arizona. The state of Arizona certainly has an interest in the resolution of claims involving its prison system, and Tripati's state law claims will benefit from the expertise of an Arizona judge on issues of Arizona law. Finally, the Court notes that Tripati's related action against Corizon, originally filed in Tennessee, has been transferred to and is currently pending in the District of Arizona. *See Tripati v. Corizon*, No. 13-615 (D. Ariz. 2013).

Indeed, the only enumerated factor that vitiates against transfer is the fact that Tripati elected to file his complaint in Pennsylvania. While a plaintiff's choice of forum should ordinarily "not be lightly disturbed," *Jumara*, 55 F.3d at 879, this factor is entitled to

significantly less deference where "the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based." *Murphy v. Trans Union, LLC*, 2012 WL 3536322, at *3 (E.D. Pa. Aug. 15, 2012) (quoting *Harris v. Nat'l R.R. Passenger Corp.*, 979 F. Supp. 2052, 1053 (E.D. Pa. 1997)). As noted above, Tripati is currently incarcerated in Arizona, and each of the events giving rise to this litigation occurred in Arizona. Tripati's preference to litigate this action in Pennsylvania, although entitled to consideration, is not sufficient to overcome the multitude of private and public interests that weigh heavily in favor of transfer. Consequently, the Court recommends that this action be transferred to the United States District Court for the District of Arizona for the convenience of the parties and witnesses and in the interest of justice.

**III.     Conclusion**

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by Defendants (ECF No. 28) be granted in part and denied in part.

It is respectfully recommended that the Motion to Dismiss be (1) denied as to Defendant Wexford; and (2) granted as to Defendants Hale, Conn, Gedman, Holmes, Froehlich, and Lehman. It is further recommended that Defendants Hale, Conn, Gedman, Holmes, Froehlich, and Lehman be dismissed from this action with prejudice for lack of personal involvement and that leave to amend would be futile as to those Defendants

Finally, it is respectfully recommended that this action be transferred to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14)

14

days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: March 2, 2015                                *s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge


cc:      ANANT KUMAR TRIPATI
102081
Arizona State Prison
Post Office Box 24401
Tucson, AZ 85734
(via U.S. First Class Mail)

Matthew R. Zwick
Weber Gallagher Simpson Stapleton Fires & Newby LLP
(via ECF electronic notification)

Samuel H. Foreman
Weber Gallagher Simpson Stapleton Fires & Newby
(via ECF electronic notification)